CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
10/16/2017
JULIA C. DUDLEY, CLERK
BY: /s/ J. Jones
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| TODD HAWKINS, <br> *Plaintiff,* <br> v. <br> JONATHAN B. FISHBECK, *ET AL.*, <br> *Defendants.* | CASE NO. 3:17-CV-00032 <br><br> MEMORANDUM OPINION <br><br> JUDGE NORMAN K. MOON |

Todd Hawkins and Jonathan Fishbeck founded the BuilderFish entities, three software development companies. But the partners split, and Hawkins alleges that Fishbeck and the other defendants (a co-worker, Fishbeck's father, and two companies) utilized BuilderFish's resources improperly for their own gain. He claims that they collectively misappropriated trade secrets and infringed copyrights, and that Fishbeck violated a non-compete agreement.

Defendants respond to these allegations in two ways. First, Jonathan Fishbeck argues that the claims against him are subject to arbitration. Because the employment agreement containing the arbitration clause has a significant relationship to the claims against him, the Court will grant the motion for all claims for damages against him, but the claims for injunctive relief are explicitly excepted by the agreement. Second, Defendants collectively argue that Hawkins does not plead sufficient facts to plausibly state his claims against them. While Hawkins properly pleads facts that state a trade secret claim, his copyright and covenant not to compete claims are both fatally flawed. The motion will accordingly be granted in part.

I. LEGAL STANDARD

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint to determine whether a plaintiff has properly stated a claim. The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), with all allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). A motion to dismiss "does not, however, resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* at 214.

Although the complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (quotation marks omitted). This is not to say Rule 12(b)(6) requires "heightened fact pleading of specifics," instead the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Still, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## II. Facts Alleged

Plaintiff Todd Hawkins and Defendant Jonathan Fishbeck co-founded the BuilderFish entities in 2010. (Dkt. 6 ¶¶ 3, 10). BuilderFish Enterprises, LLC, BuilderFish, LLC, and BuilderFish Services, LLC (collectively "the BuilderFish entities") are each Virginia limited liability companies. (*Id.* ¶ 2). BuilderFish, LLC and BuilderFish Services, LLC are wholly owned subsidiaries of Builderfish Enterprises, LLC. (*Id.*). Plaintiff and Jonathan Fishbeck each own 50% of BuilderFish Enterprises, LLC, the parent company. (*Id.* ¶ 10). Plaintiff and Jonathan Fishbeck contributed to the BuilderFish entities in different manners. Plaintiff provided financial backing for the companies, while Jonathan Fishbeck worked as an employee

and officer. (*Id.* ¶¶ 3, 10-11). The companies also employed at least one other individual. Defendant William Heapes started working for the BuilderFish entities as Chief Technology Officer in early 2016, but has no ownership stake in the company. (*Id.* ¶¶ 4, 12).

Over the past three years, the BuilderFish entities have invested $4 million dollars and the labor of its employees in the development of the "Navigator/Gravity" software. (*Id.* ¶ 11). Starting in September 2016, Defendants Jonathan Fishbeck, Heapes, and Ronald Fishbeck (Jonathan's father) allegedly removed this software from the BuilderFish entities. (*Id.* ¶¶ 13, 14, 21). Defendants Ultra Lifestyle, LLC and Griffin Group Global, LLC allegedly received this software code and used it to create unauthorized derivative products. (*Id.* ¶¶ 21, 22). Defendants Jonathan Fishbeck, Ronald Fishbeck, and Heapes have at least partial ownership of these two LLCs. (*Id.* ¶¶ 6, 7).

### III. DISCUSSION

Plaintiff alleges violations of the Defend Trade Secrets Act, 18 U.S.C. § 1831, *et seq.*, the Copyright Act, 17 U.S.C. § 101, *et seq.*, and the covenant not to compete in Jonathan Fishbeck's employment agreement. (Dkt. 6 at 8-10). But before getting to those claims, Defendants challenge whether Plaintiff can represent the BuilderFish entities under Virginia corporate law.

A.   *Plaintiff's ability to bring a derivative suit under Virginia law*

It is "well settled" that "Virginia law does not accord a shareholder standing to sue in his own right for compensatory damages caused by injury to a corporation." *Womble v. Dixon*, 752 F.2d 80, 82 (4th Cir. 1984) (citing *Keepe v. Shell Oil Co.*, 220 Va. 587, 591 (Va. 1979)). "The rule is that an officer or a shareholder of a corporation, even if he is the sole shareholder, has no personal or individual right of action against third parties for a wrong or injury inflicted by those third parties upon the corporation." *Mullins v. First Nat. Exch. Bank of Va.*, 275 F. Supp. 712,

721 (W.D. Va. 1967); see *Mission Residential, LLC v. Triple Net Properties, LLC*, 275 Va. 157, 161–62 (Va. 2008) (applying this principle to limited liability companies).

While Plaintiff cannot sue directly for any alleged injuries to the BuilderFish entities, he can sue on behalf of the limited liability companies, or "derivatively." "A derivative action is an equitable proceeding in which a member asserts, on behalf of the limited liability company, a claim that belongs to that entity rather than the member." *Mission Residential*, 275 Va. at 161–62. Va. Code § 13.1-1042 governs derivative actions brought on behalf of limited liability companies. Plaintiff can only bring a derivative action if he was a member of the company during the alleged injury, made a written demand on the company to take action, and waited ninety days to see whether the company would take action on its own behalf. Va. Code § 13.1-1042. Plaintiff must also "fairly and adequately" represent the interests of the limited liability company. *Id.* at §§ 13.1-1042, 13.1-1043.

Plaintiff made a written demand on the company, and the first three requirements are satisfied. (Dkt. 6 ¶¶ 10, 27).[1] However, Defendants dispute whether Plaintiff can "fairly and adequately" represent the interests of the company. (Dkt. 12 at 3-4). They claim that "economic antagonisms between representative and class" and "other litigation pending between the plaintiff and defendants" weigh against the Plaintiff's ability to fairly and adequately represent

---

[1] Plaintiff has not pled that the written demand was made ninety days before commencement of the action. This is not necessarily fatal to Plaintiff's derivative action—a plaintiff can avoid the ninety-day waiting period if irreparable injury would result. Va. Code § 13.1-1042(B)(2); *see also DCG & T ex rel. Battaglia/Ira v. Knight*, 68 F. Supp. 3d 579, 593 (E.D. Va. 2014). The Fourth Circuit has noted that "[i]rreparable injury often derives from the nature of copyright violations, which deprive the copyright holder of intangible exclusive rights." *Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 544 (4th Cir. 2007). Even though, as discussed below, Plaintiff has no copyright here, analogous violations are alleged. Defendant has not contested this point. Accordingly, the 90-day requirement is waived.

the BuilderFish entities. (Dkt. 12 at 3 (quoting *Office of Strategic Servs., Inc. v. Sadeghian*, 528 F. App'x 336, 350 (4th Cir. 2013))).[2]

But the parties' animosity does not necessarily doom a derivative action. *See Cattano v. Bragg*, 283 Va. 638, 647–48 (Va. 2012). In *Cattano*, the Virginia Supreme Court upheld the ability of one shareholder in a two-shareholder corporation to fairly and adequately bring a derivative action against the other. In that case, there was also "economic antagonism as well as apparent animosity between the Firm's only two shareholders," but the court was unwilling to find that this was determinative. *Id.* "To so hold would be to enact a *de facto* bar on derivative suits in two-shareholder corporations." *Id.* Instead, a court "must look beyond the mere presence of economic and emotional conflict, placing more emphasis on whether the totality of the circumstances suggest that the plaintiff will vigorously pursue the suit and that the remedy sought is in the interest of the corporation." *Id.*

Here, the totality of the circumstances demonstrate that Plaintiff is able to vigorously pursue the derivative suit in the interest of the corporation and that the remedy sought is in the interest of the corporation. First, because of Plaintiff's large interest in the company, Plaintiff would vigorously pursue these claims and be "the driving force behind the litigation." *Jennings*, 275 Va. at 601. This would resound to the benefit of the BuilderFish entities as a whole. Second, the remedy sought (the return of any trade secrets or money derived from them) is the

---

[2] These are two of the factors that courts consider in determining whether an individual can fairly and adequately represent a limited liability company's interests. *See Jennings v. Kay Jennings Family Ltd. P'ship*, 275 Va. 594, 601 (Va. 2008) (listing the following factors: "(1) economic antagonisms between the representative and members of the class; (2) the remedy sought by the plaintiff in the derivative action; (3) indications that the named plaintiff is not the driving force behind the litigation; (4) plaintiff's unfamiliarity with the litigation; (5) other litigation pending between the plaintiff and defendants; (6) the relative magnitude of plaintiff's personal interests as compared to his interests in the derivative action itself; (7) plaintiff's vindictiveness toward the defendants; and (8) the degree of support plaintiff is receiving from the shareholders he purports to represent." (citation omitted)).

same type of remedy that the company would seek on its own behalf. *See Cattano*, 283 Va. at 648 ("The remedy sought—the return of funds, misappropriated by an officer, to the corporation—is highly appropriate for a derivative claim."). Third, Plaintiff is intimately familiar with the litigation and, as the BuilderFish entities are owned only by Plaintiff and Defendant Jonathan Fishbeck, there is no one more familiar with the dispute who could bring a derivative action.

There is "other litigation pending between the plaintiff and defendants." *Jennings*, 275 Va. at 601. This distinguishes this case from *Cattano*, but the underlying concern of *Cattano* still holds: Allowing the "[c]harged emotions and economic antagonism [that] are virtually endemic to disputes in closely held corporations" to prevent derivative actions "would be to enact a *de facto* bar on derivative suits in two-shareholder corporations." 283 Va. at 647. The totality of these circumstances demonstrates that Plaintiff has standing to "fairly and adequately" pursue this derivative action on behalf of the BuilderFish entities.

B.  *Defendant Jonathan Fishbeck's Motion to Compel Arbitration*

Defendant Jonathan Fishbeck moved to compel arbitration based on an arbitration clause in his employment contract. (Dkt. 15).[3] Plaintiff admits that his claim for damages based on the

---

[3]  This Court must consider the motion to compel arbitration before ruling on the motion to dismiss. *See, e.g., Edmondson v. Lilliston Ford, Inc.*, 593 F. App'x 108, 109 (3d Cir. 2014) ("[W]e will vacate and remand with instructions that the District Court decide the motion to compel before it reaches the motion to dismiss presented by the appellee."); *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("[T]he [Federal Arbitration] Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.").

violation of the covenant not to compete is subject to arbitration, but denies that his claims under trade secret and copyright law are covered by the agreement. (Dkt. 18 at 6).[4]

The Federal Arbitration Act ("FAA") establishes a presumption of validity for arbitration agreements. *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 533 (2012) (citations omitted). In the event that a suit is brought in circumvention of an arbitration agreement, the FAA instructs courts to stay the action for "any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). The Fourth Circuit, in *Adkins v. Labor Ready, Inc.*, delineated a four element test for determining whether a party can compel arbitration under the FAA. 303 F.3d 496, 500–01 (4th Cir. 2002). The test requires: (1) "the existence of a dispute between the parties"; (2) "a written agreement that includes an arbitration provision which purports to cover the dispute"; (3) "the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce"; and (4) "the failure, neglect or refusal of the [plaintiff] to arbitrate the dispute." *Id.*

Here, the parties only contest the second element, and more specifically whether the arbitration provision covers the trade secret and copyright infringement claims. (Dkt. 18 at 6). The arbitration clause states that:

> [A]ny controversy, disagreement, or dispute arising out of or related to this Agreement, the interpretation of any of the provisions hereof, or the action or inaction of a party to this Agreement hereunder shall be submitted to final and

---

[4] Plaintiff also argues that the arbitration agreement does not apply to injunctive relief. Section 6 of the Employment Agreement expressly allows the Employer to seek injunctive relief for the violation of the "covenants and agreements" contained in the Employment Agreement. (*Id* at 3–4). Similar clauses have been held to be generally enforceable. *See, e.g., Aetrex Worldwide, Inc. v. Sourcing for You Ltd.*, 555 F. App'x 153, 153 (3d Cir. 2014). Accordingly, the arbitration agreement does not prevent Plaintiff from seeking injunctive relief in this Court.

> binding arbitration . . . . No action at law or in equity based upon any claim arising out of or related to this Agreement shall be instituted in any court by any party except [] an action to compel arbitration . . . or an action to enforce an award obtained in an arbitration.

(Dkt. 12-3 at 5).

The Fourth Circuit has characterized language nearly identical to this as a "broad agreement." *See Long v. Silver*, 248 F.3d 309, 316 (4th Cir. 2001) (discussing language that covered "any and all disputes . . . arising out of or in connection with this Agreement"). And "a broadly-worded arbitration clause applies to disputes that do not arise under the governing contract when a 'significant relationship' exists between the asserted claims and the contract in which the arbitration clause is contained." *Id.* This contract arguably covers trade secret and copyright claims. (*See* dkt. 12-3 at 2 (stating that all confidential information and intellectual property is owned by the employer)). But even if it does not, those claims certainly have a "significant relationship" to the confidentiality, intellectual property, and non-compete portions of the employment agreement. "[T]here is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Peabody Holding Co., LLC v. United Mine Workers of Am., Int'l Union*, 665 F.3d 96, 104 (4th Cir. 2012) (internal quotations omitted); *see also Great Am. Ins. Co. v. Hinkle Contracting Corp.*, 497 F. App'x 348, 352 (4th Cir. 2012) ("An issue will be classified as being outside the scope of an arbitration provision only when the parties have manifested such an intent in their written agreement."). Accordingly, the arbitration clause governs all three claims for damages against Jonathan Fishbeck, but not the claims for injunctive relief.

These covered claims will be stayed during arbitration, but the claims against other Defendants and the claim for injunctive relief against Jonathan Fishbeck remain for this Court to

address.  *See Summer Rain v. Donning Co./Publishers, Inc.*, 964 F.2d 1455, 1461 (4th Cir. 1992), *as amended* (June 23, 1992) ("The decision whether to stay the litigation of the non-arbitrable issues is a matter largely within the district court's discretion to control its docket.").

C.   *Defendants' Motion to Dismiss*

The Defendants collectively ask the Court to dismiss all three claims against them. Plaintiff's claim for relief under trade secret law clears the *Iqbal* and *Twombly* threshold, but his claims for copyright infringement and violation of the non-compete agreement both fail. Defendants' motion to dismiss will accordingly be granted in part.

1.   *Count I: Violation of the Defend Trade Secrets Act*

Enacted in 2016, the Defend Trade Secrets Act provides the following cause of action: "An owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). In order to plead a violation of the Act, Plaintiff must allege (1) that the BuilderFish entities own a trade secret, (2) that the trade secret was misappropriated, and (3) that the trade secret implicates interstate or foreign commerce. *Id.* The amended complaint successfully pleads facts that satisfy each of these elements.

First, Defendants protest that Plaintiff does not sufficiently specify that the information at issue was actually a "trade secret." The Act defines trade secrets as "scientific [and] technical . . . information" that "the owner thereof has taken reasonable measures to keep . . . secret." 18 U.S.C. § 1839(3). This information must also "derive[] independent economic value . . . from not being generally known . . . ." *Id.* The amended complaint sufficiently pleads that the purported trade secrets fall within this broad definition of scientific and technical information by describing various facets of the software and related products. (Dkt. 6 ¶ 16) ("These trade

secrets include . . . software design specifications, . . . product engineering and architecture, system prototypes, . . . [and] user interface design . . . ."). Plaintiff also sufficiently pleads that the BuilderFish entities took reasonable measures to keep this information secret by "including confidentiality and non-compete agreements" in their employment agreements. (*See id.* ¶ 18). Although never pled directly, the amended complaint also provides enough elaboration to infer that the BuilderFish entities derived value from the trade secrets. (*See id.* ¶ 16 ("These trade secrets include . . . pricing and service delivery planning and decisions . . . and work in progress with outside software development firms . . . .")).

Second, Plaintiffs also successfully plead that Defendants "misappropriated" the trade secrets. The Act defines misappropriation as "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or [] disclosure or use of a trade secret of another without express or implied consent . . . ." 18 U.S.C. § 1839(5). The "disclosure or use" category of misappropriation further requires that the discloser or user (i) "use improper means to acquire knowledge of the trade secret," (ii) know or have reason to know that the trade secret was acquired improperly, or (iii) know or have reason to know that the trade secret was "acquired by accident or mistake." *Id.*

Plaintiff alleges that Defendants Jonathan Fishbeck, Ronald Fishbeck, and Heapes "did knowingly and without authorization appropriate, copy, upload, alter, and conceal the Navigator/Gravity Trade Secrets." (Dkt. 6 ¶ 21). The next paragraph continues by alleging that the defendants "have actively participated in the copying without license of Navigator/Gravity software code, and in the creation of unauthorized derivative works based on that software code." (*Id.* ¶ 22). Rule 12(b)(6) does not require "heightened fact pleading of specifics," and these allegations that Defendants copied software code provide "enough facts to state a claim to

relief that is plausible on its face." *Twombly*, 550 U.S. at 570.[5]  Likewise, Plaintiff sufficiently pleads that Defendants Ultra Lifestyle and Griffin Group Global misappropriated the purported trade secrets.  Plaintiff alleges that these two defendants "received, bought, and/or possessed the Navigator/Gravity Trade Secrets, knowing them to be misappropriated and converted without authorization." (*Id.* ¶ 21).  Plaintiff alleges that these two companies joined the other Defendants in creating "unauthorized derivative works based on [the] software code. (*Id.* ¶ 22).  These facts, taken as true, create "a plausible claim for relief [that] survives a motion to dismiss." *Iqbal*, 556 U.S. at 679.

Third, Defendants also protest that Plaintiff does not sufficiently plead the interstate commerce requirement.  Although Plaintiff's recitation that the various aspects of the purported trade secrets "relate[] to products and services intended to be sold in or used in interstate commerce" is conclusory, the amended complaint elsewhere satisfies this element by discussing commerce with other developers and tests with potential customers.  (*See id.* ¶ 16 (discussing marketing plans, feedback from potential customers, and business with outside developers)).  Plaintiff is required to "provide the grounds of his entitlement to relief," *Twombly*, 550 U.S. at 555, and he has done so here.  Defendants' motion to dismiss this count will be denied.

2. *Count II: Copyright Infringement*

Plaintiff's claim for copyright infringement fails because neither the Plaintiff nor the BuilderFish entities have a copyright that can be infringed.  The Copyright Act is clear that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."

---

[5]  Defendants specifically question the sufficiency of the pleadings with respect to Defendant Ronald Fishbeck.  But he is identified both in these paragraphs and elsewhere in the amended complaint alongside the other Defendants.  These pleadings are sufficient for this stage.

17 U.S.C. § 411; *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157 (2010) ("[T]he Copyright [Act] requires copyright holders to register their works before suing for copyright infringement."); *Scott v. Carlson*, No. 2:17-cv-10011, 2017 WL 3599249, at *2 (W.D. Va. Aug. 21, 2017) ("[T]he registration requirement is an element of a cause of action for infringement that must be pleaded and proved by the plaintiff.").

Plaintiff argues that it is the Defendants' collective fault that he has been unable to register the copyright. (Dkt. 6 ¶ 22). But "courts should not assume that 'Congress . . . intend[ed] courts to read other unmentioned, open-ended, 'equitable' exceptions into the statute that it wrote.'" *United States v. Prescott*, 221 F.3d 686, 689 (4th Cir. 2000) (quoting *United States v. Brockamp*, 519 U.S. 347, 352 (1997)); *see also* A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 101 (2012) ("[T]he presumed point of using general words is to produce general coverage—not to leave room for courts to recognize *ad hoc* exceptions."). Congress provided "a comprehensive statutory scheme" for copyright protection. *Reed Elsevier, Inc.*, 559 U.S. at 157. This scheme "establishes a condition—copyright registration—that plaintiffs ordinarily must satisfy before filing an infringement claim . . . ." *Id.* at 158. This requirement reflects Congress's decision "to encourage copyright holders to proactively apply to register their works soon after publication, rather than wait until it became necessary to sue an infringer." *Asche & Spencer Music, Inc. v. Principato-Young Entm't, Inc.*, 147 F. Supp. 3d 833, 837 (D. Minn. 2015). "Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to." *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016).

This result is supported by the fact that Congress did choose to provide some exceptions to the registration requirement—just not any that would benefit Plaintiff. *Reed Elsevier, Inc.*, 559 U.S. at 165 ("[The statute] expressly allows courts to adjudicate infringement claims

involving unregistered works in three circumstances: where the work is not a U.S. work, where the infringement claim concerns rights of attribution and integrity under § 106A, or where the holder attempted to register the work and registration was refused."). Congress's decision to specify exceptions implies the exclusion of other exceptions of the same sort. *See Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993). This Court will not read a further exception into the statute. Because the registration requirement is not met, Plaintiff's copyright infringement claim will be dismissed.

### 3. Count III: Violation of Covenant Not to Compete

Plaintiff's third count is for Jonathan Fishbeck's alleged violation of a covenant not to compete. Plaintiff's claim for damages under Count III is subject to the arbitration agreement, but his claim for injunctive relief under Count III remains. Defendant argues that the claim should be dismissed because the non-compete agreement is overbroad. Because the agreement is unenforceable as a matter of law, Defendant's motion will be granted.

In Virginia, non-competition agreements are disfavored.[6] "A non-competition agreement between an employer and an employee will be enforced if the contract is narrowly drawn to protect the employer's legitimate business interest, is not unduly burdensome on the employee's ability to earn a living, and is not against public policy." *Omniplex World Servs. Corp. v. U.S. Investigations Servs.*, 270 Va. 246, 249 (Va. 2005). These factors should not be considered "as three separate and distinct issues." *Simmons v. Miller*, 261 Va. 561, 581 (Va. 2001). "Rather, these limitations must be considered together." *Id.* The employer bears the burden of proof and

---

[6] The employment agreement contains a valid choice of law provision stating that Virginia law governs the agreement. *See* dkt. 12-3 at 5; *Pyott-Boone Elecs. Inc. v. IRR Tr. for Donald L. Fetterolf Dated Dec. 9, 1997*, 918 F. Supp. 2d 532, 541 (W.D. Va. 2013) ("Virginia courts generally enforce choice-of-law clauses, 'unless the party challenging enforcement establishes that such provisions are unfair or unreasonable, or are affected by fraud or unequal bargaining power.'" (quoting *Paul Bus. Sys., Inc. v. Canon U.S.A., Inc.*, 240 Va. 337, 342 (1990))).

any ambiguities in the contract will be construed in favor of the employee. *Omniplex World Servs.*, 270 Va. at 249.

The non-compete agreement here states that:

> During the term of this Agreement and for a period of twelve (12) months thereafter, Executive shall not, in any capacity whatsoever, own, participate in the ownership of, manager, operate, exercise any control over, render services to, derive income from or engage in any of the foregoing for any business, firm, corporation, limited liability company, partnership, or other entity which operates a business competitive with Employer. . . .

(Dkt. 12-3 at 3). While Virginia has upheld non-compete agreements that prohibit working with direct competitors, this agreement is overbroad in two respects.

First, the agreement goes too far in restricting the functions that an employee can perform for a competitor. *See Cantol, Inc. v. McDaniel*, No. 2:06-cv-86, 2006 WL 1213992, at *4 (E.D. Va. Apr. 28, 2006) ("[T]he Virginia Supreme Court upholds covenants not to compete . . . only to the extent that the proscribed functions are the same functions as were performed for the former employer."). The language of the agreement prevents an employee "in any capacity whatsoever" from "render[ing] services to . . . a business competitive with Employer . . . ." (Dkt. 12-3 at 3). The Virginia Supreme Court has rejected similar limitations that restricted "the former employee from working in any capacity for a competitor of her former employer" as overbroad and unenforceable. *Modern Environments, Inc. v. Stinnett*, 263 Va. 491, 496 (Va. 2002); *see also Lanmark Tech., Inc. v. Canales*, 454 F. Supp. 2d 524, 530 (E.D. Va. 2006) ("Thus, where, as here, the non-compete clause effectively prohibits the employee from working in virtually any capacity for a competitor, it is not narrowly drawn to protect the employer's legitimate business interest, and thus, is functionally overbroad."). Second, the agreement is also overbroad because "[t]he non-competition clause is without geographical limitation." *Simmons*, 261 Va. at 581; *see also McDaniel*, 2006 WL 1213992, at *4 ("[T]he Supreme Court of Virginia

14

has never upheld a restrictive covenant, which was ancillary to an employer-employee relationship, when the restrictive covenant could be applied to a geographic area in which the employee performed no function for the employer."). Because of this overbreadth, the agreement is unenforceable.

Perhaps acknowledging its own breadth, the agreement also states that if a court finds the restrictions unreasonable, the restrictions should be read to extend "to the broadest business, longest period, and largest territory as may be considered reasonable by such court . . . ." (*Id.*). But Virginia has rejected similar attempts to "blue-pencil" invalid terms. *See Morris Law Office, P.C. v. Tatum*, 369 F. Supp. 2d 812, 815 (W.D. Va.), *aff'd*, 141 F. App'x 205 (4th Cir. 2005). Accordingly, the covenant not to compete is unenforceable, and Plaintiff's claim for injunctive relief under Count III must be dismissed.

## IV. CONCLUSION

Defendant Jonathan Fishbeck seeks arbitration on the claims against him under Counts I, II, and III. This motion will be granted in part—arbitration is compelled and the claims against him for damages will be stayed. The Defendants collectively seek dismissal of Counts I, II, and III, arguing that Plaintiff has failed to state a claim under the Defend Trade Secrets Act, that Plaintiff cannot bring a copyright claim because neither he nor the BuilderFish entities own a copyright, and that the state law covenant not to compete agreement is unenforceable. The Defendants' motion will be denied as to Count I, but granted as to Counts II and III. Claims under Count II and III (except the claims for damages against Jonathan Fishbeck) will be dismissed with prejudice because any attempt to amend these Counts would be futile.

While this motion to dismiss was pending, Plaintiff filed a motion for a preliminary injunction. (Dkt. 23). That motion will be considered separately.

15

Plaintiff also filed a motion to strike Defendants' motions to compel arbitration and to dismiss because Defendants did not schedule a hearing within 60 days of filing their motions. (Dkt. 28). But the local rule only states that motions are deemed withdrawn "unless otherwise ordered," and this Court retains the authority to determine a motion without oral hearing pursuant to Fed. R. Civ. P. 78(b) and Local Rule 11(b). Furthermore, this Court previously allowed Plaintiff extra time to file a response to these motions. Accordingly, this Court has considered the motions and orders that Plaintiff's motion to strike is denied.

An appropriate Order will issue, and the Clerk of the Court is hereby directed to send a copy of this Memorandum Opinion to Plaintiffs, Defendants, and all counsel of record.

Entered this  16th  day of October, 2017.

                                            NORMAN K. MOON
                                            UNITED STATES DISTRICT JUDGE